# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| **IN RE** | ) | |
| | ) | **Case No. 09-20496-TLM** |
| **LEONARD O. WALLACE and** | ) | |
| **PAMELA J. WALLACE,** | ) | **Chapter 11** |
| | ) | |
| **Debtors.** | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

### INTRODUCTION

This case is before the Court on a motion to dismiss and a motion for relief from stay filed by creditors Norman and Rodney Hayes (the "Hayes Creditors"). The motion to dismiss is supported by the United States Trustee ("UST"). Also before the Court is an oral motion to extend the exclusivity period made by Leonard Wallace.[1] Upon review of the record and the evidence presented at hearing and after considering the arguments of the parties, the Court determines the motion to dismiss will be granted and, thus, the motion for relief from stay and the motion to extend the exclusivity period will be rendered moot. The following constitute the Court's findings of fact and conclusions of law.

_____

[1] Leonard and Pamela Wallace are represented by separate counsel. For ease of reference, the Court will hereafter refer to Leonard and Pamela Wallace together as "Debtors," Leonard Wallace individually as "Wallace" and Pamela Wallace individually as "Ms. Wallace."

MEMORANDUM OF DECISION - 1

**FACTS**[2]

Through negotiations with Norman Hayes ("Hayes"), Wallace agreed to

fund development of a patented identification bolus for cattle and other livestock

in exchange for an ownership interest in the company purporting to own the

patent, MagTrac Bolus, LLC.[3]  Wallace provided funding over a period of time

and acquired a substantial interest in MagTrac Bolus, LLC.  But, in the process of

developing the bolus, the relationship between Wallace and Hayes deteriorated.

Ultimately, Wallace initiated a lawsuit against Hayes, MagTrac Bolus, LLC and

the remaining members of MagTrac Bolus, LLC in Montana state court.  Based on

MagTrac Bolus, LLC's operating agreement, the dispute was sent to arbitration in

Wyoming.

The arbitrator found that both Hayes and Wallace breached their fiduciary

duties toward MagTrac Bolus, LLC and its members.  Ex. 200 at 21-24.  The

arbitrator determined judgment would be entered against Wallace in favor of

MagTrac Bolus, LLC for $2,500,000.00 based in large part on the arbitrator's

finding that Wallace attempted to market the identification bolus patent

individually and not on behalf of MagTrac Bolus, LLC.  The arbitrator also

---

[2]  The factual background is drawn primarily from Wallace's testimony and an arbitrator's decision and award, Ex. 200, which provides the bases for the Hayes Creditors' claim. This background is also provided for context to that claim and Debtors' objection thereto.

[3]  An "intraruminal identification bolus" contains passive radiofrequency responders for individual animal identification and is used in sheep and cattle.  Saunders Comprehensive Veterinary Dictionary (3d ed. 2006).  Here, the bolus device was intended to be ingested by livestock and used to collect data (identification, medical history, temperature) which could thereafter be retrieved electronically by the livestock operator. *See* Ex. 202.

MEMORANDUM OF DECISION - 2

determined Wallace would be entitled to judgment against Hayes for various other amounts.[4]

Wallace requested the arbitration award be modified and argued that issues concerning ownership of the bolus patent, which were not disclosed during the arbitration process, constituted fraud by Hayes and should result in a modification to the arbitration award. *See* Ex. 201. The arbitrator initially stayed its proceedings pending litigation in Wyoming state court over the ownership of the bolus patent. However, prior to the resolution of that litigation, the arbitrator lifted its stay and entered supplemental findings and conclusions affirming its earlier award. *Id*. Wallace appealed the arbitrator's award, but the Montana courts affirmed the decision.

After Wallace's appeals in the Montana state courts were unsuccessful, MagTrac Bolus, LLC recorded its judgment in California where Debtors own several industrial/commercial rental properties.[5] MagTrac Bolus, LLC assigned its judgment against Wallace to the Hayes Creditors. The Hayes Creditors levied on the rents from Debtors' California properties and had the California court appoint a receiver to collect the rents and market those properties for sale in order to satisfy their judgment. The Hayes Creditors also recorded their judgment in Idaho

---

[4] The Hayes Creditors have filed a proof of claim in the amount of $6,129,062.08. *See* Ex. 308 (amended proof of claim filed October 28, 2009).

[5] Wallace testified that although the real property records on these California properties are somewhat confused by transfers made by Debtors, two of the properties are owned by Debtors as community property and the other by them as tenants in common.

MEMORANDUM OF DECISION - 3

and Washington.

## PROCEDURAL BACKGROUND[6]

On May 14, 2009, Debtors, represented by attorney Bruce Anderson, filed a

joint voluntary chapter 11 petition.  They filed their schedules on May 29, 2009.

*See* Ex. 401.  Debtors' summary of schedules lists assets of $24,398,967.29 and

liabilities of $20,074,038.26.  Ex. 402.  Debtors initially listed only their home in

Post Falls, Idaho on their schedule A as real property owned by Debtors.  Ex. 401.

On their schedule B, Debtors listed cash and several bank accounts totaling

approximately $122,000.  *Id.*  Debtors also listed ownership interests in a number

of businesses, including Lowind, LLC; LOWPRW, LLC; Iron Rooster, LLC; and

Blossom Properties LLC, each of which owned substantial assets.  Debtors later

amended their schedules to reflect their personal ownership in three California

properties originally listed as owned by LOWPRW, LLC.  *See* Exs. 401, 404.

Debtors also listed a number of secured creditors, but they listed only two

unsecured creditors with total unsecured debts of $82,500.  Ex. 401.

Anderson, as counsel for Debtors, submitted Debtors' original and

amended schedules; defended an initial motion for relief from stay and a motion to

---

[6]   The Court takes judicial notice of its files and records under Fed. R. Evid. 201, and it treats statements made by Debtors under penalty of perjury in their schedules and statements as admissions under Fed. R. Evid. 801(d).  *See, e.g., Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 62 n.16, 08.3 I.B.C.R. 116, 118 n.16 (Bankr. D. Idaho 2008).

MEMORANDUM OF DECISION - 4

excuse compliance with § 543[7] filed by the Hayes Creditors; and filed a motion to

extend the § 1121 exclusivity period.[8]  However, in August, Anderson moved to

withdraw as Debtors' counsel.  Anderson's Motion was granted on September 15,

2009.  *See* Doc. Nos. 92, 93.

On September 17, 2009, prior to Debtors finding new counsel[9] and

notwithstanding this Court's order that no further proceedings affecting Debtors'

rights occur until after September 30, 2009, the Hayes Creditors filed a motion for

relief from stay and a motion to dismiss Debtors' case.  *See* Doc. Nos. 96, 99.

On November 3, 2009, the Hayes Creditors amended their motion to

dismiss, and the UST filed a response in support of that amended motion.  *See*

Doc. Nos. 136, 149.  The parties presented evidence on the Hayes Creditors'

amended motion to dismiss and motion for relief from stay on December 1, 2009,

and made their closing arguments on December 10.  During argument on

December 10, 2009, Wallace's counsel made an oral motion to again extend the

exclusivity period which was set to expire that day.  He requested that extension

run until an unspecified date after March 2, 2010, which was when Debtors

---

[7]  Unless otherwise indicated, statutory citations are to the Bankruptcy Code, Title 11 U.S. Code, §§ 101-1532.

[8]  On October 6, 2010, the Court granted Debtors' motion to extend the exclusivity period until December 10, 2009.  *See* Doc. No. 110.

[9]  On October 22, 2009, Wallace filed an application to employ Jerome Shulkin and H. James Magnuson.  *See* Doc. No. 116.  On November 2, 2009, Ms. Wallace filed an application to employ Michael Ramsden.  *See* Doc. No. 131.

MEMORANDUM OF DECISION - 5

planned to present evidence on their objection to the Hayes Creditors' claim.[10]

## DISCUSSION AND DISPOSITION

### A.  Dismissal under § 1112

Section 1112(b) requires a movant to show "cause" to dismiss or convert a

chapter 11 case.  The Bankruptcy Abuse Prevention and Consumer Protection Act

of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA") amended § 1112(b) and

expanded the list of cause.[11]  This Court has determined that the specific examples

---

[10]  On November 2, 2009, Wallace filed an objection to the Hayes Creditors' claim based primarily on alleged fraud by the Hayes Creditors in obtaining the arbitration award and state court judgment.  *See* Doc. No. 128.  On November 24, 2009, Ms. Wallace filed a joint objection to the Hayes Creditors' claim as against her personal property.  *See* Doc. No. 153.  The Hayes Creditors responded to the objections, Doc. Nos. 142 and 162.  The objections have not been set for hearing, but Debtors have contacted the Court's clerk to tentatively reserve the March 2 date.

[11]  Section 1112(b)(4) states:

(4) For purposes of this subsection, the term 'cause' includes--

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(continued...)

of cause found in current § 1112(b)(4) are non-exclusive.  *See In re Jayo*, 06.3
I.B.C.R. 71, 74, 2006 WL 2433451 at *5-6 (Bankr. D. Idaho 2006) (interpreting
the "and" in § 1112(b)(4)(O) as an "or").  When originally drafting § 1112(b),
Congress stated:

> Subsection (b) gives wide discretion to the court to make an
> appropriate disposition of the case when a party in interest requests.
> The court is permitted to convert a reorganization case to a liquidation
> case or to dismiss the case, whichever is in the best interests of the
> creditors and the estate, only for cause . . ..  The list [of grounds that
> constitute cause set forth in § 1112(b)] is not exhaustive.  The court
> will be able to consider other factors as they arise, and to use its
> equitable powers to reach an appropriate result in individual cases.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 405-06 (1977).  However, some of the

---

[11] (...continued)
(H) failure timely to provide information or attend meetings reasonably
requested by the United States trustee (or the bankruptcy administrator, if
any);

(I) failure timely to pay taxes owed after the date of the order for relief or to
file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan, within
the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a
condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first
becomes payable after the date of the filing of the petition.

MEMORANDUM OF DECISION - 7

Court's discretion has been limited by the BAPCPA amendments.  Under current § 1112(b), if a movant demonstrates cause, dismissal or conversion is now generally required.[12]

The Hayes Creditors rely upon §1112(b)(4)(A), (C), (D), (J) and general "bad faith" to support their motion to dismiss.  The UST joins the Hayes Creditors in alleging cause exists under §1112(b)(4)(A) and raises additional issues under §1112(b)(4)(B).

### 1.    Loss to or diminution of the estate - § 1112(b)(4)(A)

Section 1112(b)(4)(A) states that a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitute grounds to dismiss a chapter 11 bankruptcy case.  Here, the Court concludes there has been a continuing loss to or diminution of the estate without a reasonable likelihood of rehabilitation.

Upon Debtors' initial filing in May, they held approximately $122,000 in cash and funds on hand in their personal bank accounts.  By October, Debtors

---

[12]

Under the 2005 Amendments, it is now substantially easier for a creditor or the United States Trustee to secure the dismissal of a Chapter 11 case, the conversion of a case to Chapter 7, or the appointment of a trustee or examiner.  The 2005 Amendments achieve this result by expanding the definition of "cause" for such relief, and by leaving courts less discretion to deny such relief once the moving party establishes cause. . . .  The changes to § 1112 have great significance because they apply to *all* Chapter 11 cases, not just cases filed by small businesses.

 *See* Hon. Thomas E. Carlson & Jennifer Frasier Hayes, *The Small Business Provisions of the 2005 Bankruptcy Amendments*, 79 Am. Bankr. L.J. 645, 667 (2005) (hereafter "Carlson").  The limited exceptions to the required conversion or dismissal will be discussed *infra*.

MEMORANDUM OF DECISION - 8

reported only $4,600 in their debtor in possession account.  Ex. 410.  While

Wallace testified that the debtor in possession account held approximately $30,000

at the time of the December hearing, even that amount constitutes a substantial

reduction in estate assets from the date of filing.

Debtors' operating reports demonstrate Debtors are spending money at a

significant rate, but the reports provide little helpful explanation as to where the

money is going, or more importantly, why.  *See* Ex. 406-410.  As of October,

2009, Debtors claimed to have incurred over $71,000 in living expenses *excluding*

their mortgage payment, telephone, utilities and home maintenance.[13]  Ex. 410.

While there is some attempt to break down this $71,000 figure, the bulk of the

funds, some $48,000, is characterized by Debtors as "miscellaneous household

expense."  Wallace could not provide a detailed explanation of those personal

expenses.

In addition, Wallace testified that Debtors' wholly-owned businesses have

contributed cash into the estate every month.  The nature of these contributions is

not clearly delineated, *e.g.*, as "shareholder loans" or "owner draws,"  in Debtors'

reports.  Wallace testified that some of the funds "belonged to" Debtors and were

improperly entered into the reports as money received from the businesses, but

others such as funds received from Iron Rooster, LLC were unsecured loans.  Such

---

[13]   If the Court were to include the mortgage expenses, utilities, home maintenance, and
telephone, the five month total from June through October would exceed $101,000.

MEMORANDUM OF DECISION - 9

postpetition borrowing has increased Debtors' liabilities.[14]

Section 1112(b)(4)(A) concerns not only losses and diminution of the estate but also requires the absence of a reasonable likelihood of rehabilitation. "The issue of rehabilitation for purposes of § 1112(b)(4)(A) 'is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort.'" *In re LG Motors, Inc.*, ____ B.R. ___, 2009 WL 4110125, at *5 (Bankr. N.D. Ill. 2009) (quoting *In re Rey*, Nos. 04-B-35040, 04-B-22548, 06-B-4487, 2006 WL 2457435, at *6 (Bankr. N.D. Ill. Aug. 21, 2006)).

Here, Debtors provide no basis for the Court to conclude that future expenses will not continue to accrue at this rate. Though Wallace acknowledged Debtors needed to do a better job reporting expenditures, he did not address how or if the expenditures would be reduced to stem the continued dissipation of Debtors' assets.

Moreover, Wallace testified – and other evidence confirmed – that tenants in the California properties were vacating the buildings. One had already left and another was scheduled to leave in the near future. Debtors had not procured replacement tenants.

Debtors presented no cogent outline of a proposed reorganization or

---

[14]  In addition, these unsecured loans appear to be out of the ordinary course of business and were not obtained with Court approval which raises concerns beyond diminution of the estate. *See* § 364(a)-(c).

MEMORANDUM OF DECISION - 10

restructure.  Rather, as will be mentioned again below, Debtors' case is premised

on pursuing claim litigation with the Hayes Creditors.  Notwithstanding

prebankruptcy arbitration and judgment in favor of MagTrac Bolus, LLC, and

judicial affirmance of those decisions in the Montana District and Supreme Courts,

Debtors propose to attack that claim in this Court.  Numerous issues are obviously

presented by that vision of "reorganization," and several were argued on

December 10.

On the present record, with (1) a significant depletion of assets; (2) the

large, unexplained and poorly justified expenditures; (3) an existing reduction and

an anticipated further reduction in rental income; and (4) no "plan" beyond claim

litigation, cause exists for dismissal under the standard of § 1112(b)(4)(A).

### 2. Gross mismanagement - § 1112(b)(4)(B)

Debtors are debtors in possession of their chapter 11 estate.  As such, they

owe fiduciary duties to their creditors and are obligated to follow the Code and

Rules.  *See, e.g.,* §§ 1106, 1107 and Fed. R. Bankr. P. 2015 (delineating the duties

of chapter 11 debtors in possession, including filing periodic reports of business

operations); 7 Collier on Bankruptcy, ¶ 1107.02, 1107-6 (Alan N. Resnick &

Henry J. Sommer eds., 15th ed. rev. 2009) ("The debtor in possession must

perform not only the functions and duties of a chapter 11 trustee, as specified in

section 1106(a), but also the duties set forth in Bankruptcy Code chapters 3 and 5,

and the Federal Rules of Bankruptcy Procedures, which are applicable to chapter

MEMORANDUM OF DECISION - 11

11 cases."). The UST provides debtors in possession with guidelines to help them navigate chapter 11 by clarifying their financial reporting requirements and addressing other requirements and the several limitations on their postpetition actions.[15] The guidelines echo the Code's provisions, and they specifically warn of the need for court approval prior to paying prepetition creditors; paying professionals, such as an attorney, accountant, or appraiser; or obtaining credit or financing outside the ordinary course of the debtor's business. A number of these acts have occurred in this case.

Debtors paid professionals without prior Court approval. The Court approved Debtors' employment of Anderson Brothers as accountants for the estate as of June 8, 2009. *See* Doc. Nos. 33, 52. Wallace testified that Anderson Brothers provided accounting services for Debtors' numerous businesses and for Debtors personally, and that Debtors have paid their accountants several thousand dollars over the course of this case. The operating reports disclose payments to Anderson Brothers of $207.36 on July 21, 2009; $6,017.50 on August 10, 2009; $1,596.25 on September 9, 2009; and $994.74 on October 5, 2009. *See* Exs. 406-410. None of the over $8,800 in payments were approved by this Court, yet all of these funds came out of the debtor in possession account.[16] Failure to obtain court

---

[15] Here, no evidence was presented that confirmed Debtors received or read these guidelines. However, the guidelines were provided to their former counsel. And they were filed of record and thus available to Debtors and their attorneys. *See* Doc. No. 4.

[16] The record is inadequate to establish whether all the bills so paid were owed by

(continued...)

MEMORANDUM OF DECISION - 12

approval for compensation of professionals violates the Code.  *See* § 331.[17]

Debtors have obtained postpetition financing without prior Court approval.
Debtors' various business entities have provided funds to Debtors.  As noted, the
structure of this funding was not clear in Debtors' operating reports.  However,
Wallace did testify that the funds contributed by Iron Rooster, LLC were "loans."
No evidence was presented that such lending was obtained in the ordinary course
of Debtors' business, and obtaining postpetition financing outside the ordinary
course of business requires Court approval.  *See* § 364(a)-(c).[18]

Debtors have paid prepetition debts.  Debtors had prepetition credit card
accounts with American Express and Bank of America.[19]  Wallace testified some
prepetition charges were incurred on those credit cards.  Debtors paid Bank of
America approximately $4,700 on June 9, 2009, and American Express

---

[16] (...continued)
Debtors personally or were owed by Debtors' businesses.  If the former, payment was
unapproved under § 331 and improper.  If the latter, payment was still improper, though for a
different reason (*i.e.*, the LLC's, and not the LLC's owners personally, should pay those entities'
bills).

[17]  In addition, Debtors employed and paid an appraiser, Tom Hanson, $800.00
postpetition.  *See* Ex. 407.

[18]  Limited liability companies are legal entities and care must be taken to recognize that
they and their financial affairs are separate from those of their owners.  *See, e.g., In re Young*, 409
B.R. 508 (Bankr. D. Idaho 2009); *In re Aldape Telford Glazier, Inc.*, 410 B.R. 60 (Bankr. D.
Idaho 2009); *see also Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712 (9th Cir. BAP
2004).

[19]  Though such debts existed, Debtors failed to list the credit card companies as
unsecured creditors on their schedules.

MEMORANDUM OF DECISION - 13

approximately $5,200 on June 26, 2009.[20]  *See* Ex. 406.  Wallace also testified that

Debtors were current as of the time of the hearing on all credit card debts.

Therefore, Debtors paid prepetition credit card debt in an undisclosed amount.

Debtors' payment of prepetition debts without prior Court approval violated the

Code.

These several violations of the Code are examples of mismanagement of

the bankruptcy estate.  Taken in conjunction with Debtors' inadequate financial

reporting and the conduct described in connection with § 1112(b)(4)(A) *supra*, the

Court determines there has been a gross mismanagement of the estate under

§ 1112(b)(4)(B), and this constitutes cause for dismissal.[21]

### 3.    Exceptions to dismissal under § 1112(b)

The Code states:

(b)(1) Except as provided in paragraph (2) of this subsection,
subsection (c) of this section, and section 1104(a)(3), on request of a
party in interest, and after notice and a hearing, absent unusual
circumstances specifically identified by the court that establish that
the requested conversion or dismissal is not in the best interests of
creditors and the estate, the court shall convert a case under this
chapter to a case under chapter 7 or dismiss a case under this
chapter, whichever is in the best interests of creditors and the estate,

---

[20]   The Court does not have an operating report disclosing any payments between the
time of filing on May 14, 2009, and the end of that calendar month.  While Debtors may have
made a payment to either of those credit card companies in that time period, Wallace could not
state whether such a payment was made.

[21]   Though the Hayes Creditors assert several other causes for dismissal, including
unauthorized use of cash collateral under § 1112(b)(4)(D) and "cause" based upon bad faith, the
Court declines to address these grounds as the finding under § 1112(b)(4)(A) and (B) present
sufficient cause under the Code to dismiss.

MEMORANDUM OF DECISION - 14

if the movant establishes cause.

(2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interest of creditors of the estate, if the debtor . . . establishes that –

> (A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time; and

> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) –
>> (i) for which there exists a reasonable justification for the act or omission; and
>> (ii) that will be cured within a reasonable period of time fixed by the court.

Section 1112(b).  BAPCPA's amendments to § 1112(b) have generously been described as "linguistically difficult."  7 Collier on Bankruptcy, ¶ 1112.05[2], 1112-44.[22]  As the bankruptcy court explained in *In re Orbit Petroleum, Inc.*, 396 B.R. 145, 148 (Bankr. D.N.M. 2008), § 1112(b) dictates that:

> Once "cause" has been demonstrated, the Court must convert or dismiss, unless the Court specifically identifies "unusual circumstances . . . that establish that such relief is not in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1). However, absent unusual circumstances, the Court must not convert or dismiss a case if (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time. 11 U.S.C. § 1112(b)(2); 7 Collier on Bankruptcy ¶ 1112.04[1] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev.2008).

---

[22] *See also* Carlson, 79 Am. Bankr. L.J. at 669-72 (addressing the restrictions on the court's discretion and the "inartful" language of § 1112(b)(2)'s "safe-harbor exculpation").

MEMORANDUM OF DECISION - 15

Therefore, pursuant to § 1112(b)(2)(B), if cause for dismissal consists of loss or diminution to the estate under § 1112(b)(4)(A), § 1112(b)(2)'s exception to conversion or dismissal may not apply. *See In re Kent*, 2008 WL 5047799, at *5 n.5 (Bankr. D. Ariz. 2008); *In re Fisher*, 2008 WL 1775123, at *6 (Bankr. D. Mont. 2008).[23] However, if the demonstrated cause to convert or dismiss the case is found under a section other then § 1112(b)(4)(A), then the court must consider whether there exists a reasonable justification for the act or omission constituting cause for conversion or dismissal, as well as whether the act or omission can be cured within a reasonable time fixed by the court.

The statute operates in the present case as follows. In order to prevent dismissal upon the cause shown under § 1112(b)(4)(A) by the Hayes Creditors and the UST, the Court must find and specifically identify "unusual circumstances . . . that establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate" under § 1112(b)(1) and the additional provisions of § 1112(b)(2)(B) do not apply. In order to prevent dismissal upon the cause shown by the Hayes Creditors and the UST under § 1112(b)(4)(B), the evaluation under § 1112(b)(2) is required in addition to that of § 1112(b)(1).

---

[23] Most courts and commentators appear to conclude that, if cause under § 1112(b)(4)(A) is found, § 1112(b)(2) is inapplicable. This appears in part due to the "and" between § 1112(b)(2)(A) and (B). Arguably § 1112(b)(2)(A) could still apply to the § 1112(b)(4)(A) cause proven, but that provision (reasonably likelihood of confirming a plan within a reasonable amount of time) is likely subsumed within the sort of "unusual circumstances" already made relevant by § 1112(b)(1).

MEMORANDUM OF DECISION - 16

### a.    Unusual circumstances under § 1112(b)(1)

The Code does not define unusual circumstances; however, courts have determined that it "contemplates conditions that are not common in most chapter 11 cases." *Orbit Petroleum*, 395 B.R. at 148 (citing *Fisher*, 2008 WL 1775123 at *5); *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560-61 (Bankr. M.D. Pa. 2007). Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate. For example, in *Orbit Petroleum*, the debtor proposed a plan that would pay all creditors in full. The court found such a circumstance was uncommon in chapter 11 and to dismiss or convert the case, prior to giving debtor time to confirm such a plan, would not be in the best interest of creditors or the estate.

Here, Debtors's arguments were not directed toward or referenced to the statutory language of § 1112(b). However, the Court determines that the suggested unusual circumstances arise from the fraud allegedly committed by the Hayes Creditors in the litigation underlying the Hayes Creditors' claim and the fact that there is a "necessity" of claim litigation before this Court.[24]  However, a contentious dispute over a creditor's claim is not an unusual circumstance in a chapter 11 case. Debtors' objections argue that the Hayes Creditors committed

---

[24]  Debtors also argue that a patent infringement claim is a matter of federal law that should be heard by this Court. *See* Doc. No. 128 at 3. (Presumably Debtors feel a bankruptcy court, rather than the United States District Court, can consider such patent issues, perhaps as a related matter. *See* 28 U.S.C. § 1334(b), (c).)

MEMORANDUM OF DECISION - 17

"fraud on the court" in Montana.  However, Debtors did not demonstrate that the suggested fraud could not be raised in the court in which it was allegedly committed.  In argument on December 10, they asserted the alleged fraud justified a collateral attack on the judgment before this Court because while intrinsic fraud could be raised to the Montana state courts, such courts have shown themselves to be "unfair" and "biased" and unwilling to consider Debtors' fraud arguments. Wallace's counsel argued that the Montana courts have even enjoined Wallace from further contest of the judgment.

The Court finds such arguments less then compelling.  A debtor's desire to continue litigation against an adversary, notwithstanding prior adverse judgment and adverse appellate rulings, is not in and of itself an "unusual circumstance" that establishes that "the requested conversion or dismissal is not in the best interests of creditors and the estate," even if arguably in the *debtor's* best interest. Therefore, conversion or dismissal for cause shown under § 1112(b)(4)(A) is required.

### b.      Exception to dismissal or conversion in § 1112(b)(2)

In connection with the conduct and mismanagement constituting cause under § 1112(b)(4)(B), Debtors essentially place blame on their former attorney. They argue their prior acts or omissions which violated the Code were the result of poor counseling and inadequate communication.  Their evidence was unpersuasive.

MEMORANDUM OF DECISION - 18

Even assuming Debtors' former counsel provided poor guidance to Debtors in regard to management of Debtors' chapter 11 case, something the Court does not find particularly credible on the evidence the parties chose to present, Wallace retained new counsel over a month prior to the December hearing. At that hearing, Wallace continued to disclaim knowledge of Debtors' duties. The fact that he had been represented by new counsel for over a month and still did not understand his duties and obligations as a fiduciary to his creditors belies his claim that former counsel was the source of all errors, and his assurance that he would cure the mismanagement that had occurred in this case. Wallace was also incapable of providing any specifics regarding what had been mishandled or how it would change or be cured. He indicated merely a willingness to do whatever he was told to do to correct the mistakes.

Debtors also cite a number of cases in their attempt to rebut the grounds for dismissal involving misuse of assets, Code violations and bad faith. One such case, *In re Dilling*, 322 B.R. 353 (Bankr. N.D. Ill. 2005), denied a motion to dismiss even though the Court found the debtor had engaged in "some questionable transactions" by transferring assets and improperly paying debts without court approval. *Dilling* concluded that the debtor had not materially reduced the assets available to creditors and had expressed a willingness to reverse the improper transactions. In *Dilling*, the improper transactions were raised in the

MEMORANDUM OF DECISION - 19

context of alleged bad faith as cause for dismissal.[25]  While Debtors may posit this case as rebuttal to the Hayes Creditors' bad faith arguments, to the extent it is urged in rebuttal to § 1112(b)(4)(B), raised by the UST, the case is clearly distinguishable.  Here, the improper transactions did materially reduce the assets available to creditors, and, unlike *Dilling*, the Court does not find that the improper transactions were justified or harmless.

On the evidence, Debtors have not demonstrated reasonable justifications for their mismanagement nor that cure is possible.

Section 1112(b)(2) also requires a showing of a reasonable likelihood of confirming a plan within a reasonable time.  Debtors have yet to file a proposed plan or disclosure statement.  The very idea of a plan depends on the results of their objections to the Hayes Creditors' claim.  They argue the resolution of claim litigation with the Hayes Creditors is so momentous that drafting a plan now would be useless.[26]  Wallace was unable to predict when a plan would be filed. The Court, left without form or detail regarding Debtors' future plan for

---

[25]  Section 1112(b)(4)(B) was added by BAPCPA and was not a listed cause for dismissal at the time the *Dilling* case was filed.

[26]  Wallace testified that if Debtors were successful in defeating the Hayes Creditors' claim, Debtors would not need to stay in bankruptcy, and his counsel confirmed that proposing a plan without the need to deal with the Hayes Creditors' claim would be a "piece of cake." However, neither Wallace, nor his counsel, suggested that reorganization would be viable or a plan proposed if Debtors were to lose the claim litigation.  Wallace's counsel states, in briefing, "Only if the Debtor's Objection to Claim No. 7 is denied will there be a serious problem of being able to fund and resolve a Plan."  *See* Doc. No. 157 at 3.

MEMORANDUM OF DECISION - 20

reorganization, cannot conclude Debtors met their burden.[27]

### 4.      Dismissal or conversion

Upon determining cause exists and that there are no unusual circumstances to negate dismissal or conversion, the Court must address another issue – whether it is conversion or dismissal that is "in the best interests of creditors and the estate."  *See* § 1112(b)(1); *Shulkin Hutton, Inc. v. Treiger (In re Owens)*, 552 F.3d 958, 960-61 (9th Cir. 2008); *Jayo*, 06.3 I.B.C.R. at 77, 2006 WL 2433451, at *9.  The UST and the Hayes Creditors advocate for dismissal.  Given the fact that Debtors' creditors are primarily secured with recourse to assets and state court remedies, and that this case consists primarily of a two-party dispute between Debtors and the Hayes Creditors, the Court concludes dismissal is the appropriate course of action.

## CONCLUSION

The Hayes Creditors and the UST have established cause for dismissal under § 1112(b).  The Court does not find unusual circumstances to negate conversion or dismissal under § 1112(b)(1).  Nor to the extent § 1112(b)(2) is implicated have Debtors established that their acts or omissions constituting cause

---

[27] In effect, Debtors' proposed reorganization is a two-party dispute.  Debtors seek to use this Court to advance a collateral attack on the Hayes Creditors' judgment in lieu of seeking such relief in state court.  If successful (undoubtedly after years of litigation and appeals) there would be no need for a plan, or for a bankruptcy process except to provide the alternative forum.  Using the bankruptcy court in such a way, to further a two-party dispute, is disfavored.  *See In re Erikins*, 253 B.R. 470, 474-75, 00.4 I.B.C.R. 171, 172 (Bankr. D. Idaho 2000).

MEMORANDUM OF DECISION - 21

are justified or capable of cure or that there is a reasonable likelihood of

confirming a chapter 11 plan.  Thus, the Hayes Creditors' motion to dismiss, Doc.

No. 136, will be granted.

 With dismissal, the pending motions in this case such as the Hayes

Creditors' motion for relief from stay, Debtors' oral motion to extend the

exclusivity period, Debtors' motion to lift protective order/stay, and the Hayes

Creditors' request for a status conference are rendered moot.  All hearings set on

the February 2, 2009 calendar in this case will be vacated.

 The Hayes Creditors shall submit a form of order consistent with this

Decision.

DATED:  January 26, 2010

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 22